IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WARREN FITZGERALD SENEGAL | § | |
| | § | |
| V. | § | A-10-CA-534-LY |
| | § | |
| SHERIFF GREG HAMILTON, | § | |
| MEDICAL ADMINISTRATOR SUSAN | § | |
| STORY, and MEDICAL DIRECTOR | § | |
| MIKE SUMMERS | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates Judges, as amended, effective December 1, 2002.

Before the Court are Plaintiff's complaint brought pursuant to 42 U.S.C. § 1983 (Document No. 1); Plaintiff's more definite statement (Document No. 27); Defendants' Motion for Summary Judgment (Document Nos. 29-30); Plaintiff's response (Document No. 39); and Defendants' reply (Document No. 45). Plaintiff, proceeding pro se, has been granted leave to proceed in forma pauperis.

**I. BACKGROUND**

At the time he filed his civil rights complaint, Plaintiff was incarcerated in the Travis County Correctional Complex ("TCCC"). Plaintiff's custody was subsequently transferred to the Texas Department of Criminal Justice - Correctional Institutions Division. According to Plaintiff, he was

booked into the Travis County Jail on April 6, 2010. At that time, Plaintiff allegedly informed the medical department of his history of high blood pressure and heart problems. Plaintiff asserts he notified jail officials of his current medications. Plaintiff complains two of the medications, Clonidine and Norvasc, were immediately discontinued. Plaintiff alleges he remained at the Travis County Jail for twenty days and was seen a number of times by the nurse practitioner for his chronic ailments and injuries sustained during his arrest. Plaintiff indicates he was transferred from the Travis County Jail to the TCCC on April 26, 2010. According to Plaintiff, he made repeated requests to see a medical provider. Plaintiff alleges he was not seen by any medical provider for 43 days in spite of constant formal medical complaints detailing increased high blood pressure, heart and chest pains, headaches, dizziness, and difficulty breathing.

Plaintiff maintains he filed a formal complaint with Medical Administrator Susan Story, who responded that Plaintiff had been seen by medical on eight occasions. Plaintiff contests the accuracy of Story's response, and states he was seen by a nurse practitioner on June 2, 2010. At that time, Plaintiff was allegedly informed there appeared to be irregularities in his heart beat and he would be scheduled for an EKG. Plaintiff claims he had the EKG the following day on June 3, 2010. Due to the result of the EKG, Plaintiff asserts he was transported to the hospital. Plaintiff claims he was informed by the emergency room doctor that Plaintiff was not experiencing a heart attack but that he did have damage to his heart as a result of allowing his blood pressure to remain high for an extended period of time. Plaintiff alleges he was given more medication and returned to the TCCC. Plaintiff alleges after his return he had high blood pressure readings three days in a row, but he did not see a medical provider for about a week. Plaintiff claims there is a systematic problem with Travis County's ability to provide medical attention in a timely manner.

Plaintiff sues Travis County Sheriff Greg Hamilton, Medical Administrator Susan Story, and Medical Director Mike Summers. He requests the Court to ensure that Travis County provides adequate medical care for inmates. He also seeks an unspecified amount of compensatory damages.

On November 4, 2010, Plaintiff filed a more definite statement. Plaintiff makes clear his claim is for deliberate indifference to his medical needs, because he was denied medical attention from April 20, 2010 until June 3, 2010. Plaintiff also claims Defendants and their subordinates committed medical malpractice and gross negligence. Plaintiff contends Defendants are responsible for the actions of his or her agents and employees. In addition, Plaintiff alleges he made many requests and complaints to the position of administrator and director of medical regarding the lack of medical care, and his requests were ignored.

Plaintiff alleges Defendant Summers failed to properly train and supervise his employees and subordinates in policies and procedures implemented, if any, which would ensure sufficient medical treatment for Plaintiff's serious medical needs and to provide for them in a timely manner. In addition, Plaintiff alleges Defendant Summers and his medical staff knew or should have known that denying Plaintiff two of his medications without tapering them off would create an extremely high risk of injury and harm to Plaintiff's heart and cardiovascular system or death. Plaintiff contends Defendants caused an injury known as Left Ventricular Hypertrophy ("LVH") when they denied him access to medical providers for more than 1 ½ months.

Plaintiff believes Defendants made a conscious choice to deny or delay medical care because Plaintiff still owes for his medical care incurred during his previous incarceration and the cost for his current detention was increasing.

Defendants move for summary judgment. They argue they were not personally involved in the incident that is the basis of Plaintiff's lawsuit. They further argue they never acted with deliberate indifference towards Plaintiff. Defendants also assert their entitlement to qualified immunity. Defendants also maintain Plaintiff has failed to identify a policy, practice, or custom, which caused the violation of his constitutional rights.

Plaintiff filed an affidavit in response to Defendants' Motion for Summary Judgment. Plaintiff responds he is suing Sheriff Hamilton for allowing the alleged illegal acts to occur and for his gross negligence in managing the people he was supposed to supervise. Plaintiff contends Hamilton is vicariously liable for the actions of his employees. With regard to Defendant Summers, Plaintiff reasserts Summers ignored his official complaints and grievances wherein Plaintiff attempted to obtain assistance from him when his employees were intentionally and deliberately denying and delaying him seriously needed medical attention. Plaintiff argues Summers enforced a practice of removing inmates from Clonidine without tapering off as recommended by the manufacturer.

Plaintiff reasserts with regard to Defendant Story that she failed to review Plaintiff's medical files appropriately. Plaintiff points out he was not seen by a medical provider between April 21, 2010, and June 3, 2010, and between June 5, 2010, and June 21, 2010. During these time periods, Plaintiff complains an employee known as "J.C. 1307" improperly responded to his med-line requests. Plaintiff contends J.C. 1307 is primarily responsible for the deliberate act of denying him medical attention in a timely manner, but that the Defendants are vicariously liable for her acts.

According to Plaintiff, he was diagnosed with LVH when he was taken to the hospital on June 4, 2010. Plaintiff indicates this is evidenced in Defendants' Exhibit A-4 at 2450459 and

2450460, which states "Normal sinus rhythm; Minimal voltage criteria for LVH, may be normal variant; Early reploriation; Borderline ECG." Plaintiff asserts the doctors at the hospital recommended further testing as soon as possible, but Summers declined the recommendation. Plaintiff concludes Defendants acted with deliberate indifference to his serious medical needs because he was delayed access to a medical provider after he was transferred to the TCCC.

Plaintiff complains he has been unable to appropriately respond to Defendants' Motion for Summary Judgment. He explains he has not had adequate access to a law library and legal supplies due to him being transferred several times to different TDCJ units. According to Plaintiff, he finally was transferred to the Stiles Unit, his assigned unit, but on the day he arrived there was an escape. According to Plaintiff, the prison unit was on an indefinite lock-down, limiting his access to the courts.

## II. ANALYSIS

A. <u>Summary Judgment Standard</u>

Defendants filed their Motion for Summary Judgment on November 19, 2010. Plaintiff was granted an extension of time in which to file his response, which was finally filed on March 21, 2011. According to personnel for TDCJ Access to Courts, the Stiles Unit was on facility lockdown from March 10, 2011, the date of the escape, until April 11, 2011.[1] Since the lockdown was lifted on April 11, 2011, Plaintiff has not filed a supplemental response. The Court is of the opinion Plaintiff has had more than a fair opportunity to respond to Defendants' Motion for Summary Judgment.

---

[1] Court personnel contacted TDCJ Access to Courts to determine the dates of the facility lockdown.

A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996); Int'l Shortstop, Inc. v. Rally Inc., 939 F.2d 1257, 1263 (5th Cir. 1991), cert. denied, 502 U.S. 1059, 112 S. Ct. 936 (1992). When a motion for summary judgment is made and supported, an adverse party may not rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial. Ray v. Tandem Computers, Inc., 63 F.3d 429, 433 (5th Cir. 1995); FED. R. CIV. P. 56.[2]

Both movants and non-movants bear burdens of proof in the summary judgment process. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. Id. at 322, 106 S. Ct. at 2552. In so doing, the moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. Id. at 323-24, 106 S. Ct. at 2554. At that point, the burden shifts to the non-moving party to "produce evidence in support of its claims or affirmative defenses . . . designating specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. at 2553. The non-moving party must produce "specific facts" showing a genuine issue for trial, not mere general allegations. Tubacex v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995).

---

[2] Effective December 1, 2010, Rule 56 was amended. Although there is a slight language change and a change in the designation of subsections, the legal standard remains the same. See FED. R. CIV. P. 56(a) (eff. Dec.1, 2010) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. The Fifth Circuit has concluded "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." James v. Sadler, 909 F.2d 834, 837 (5th Cir. 1990) (citing Matsushita, 475 U.S. at 586, 106 S. Ct. 1356)). To the extent facts are undisputed, a Court may resolve the case as a matter of law. Blackwell v. Barton, 34 F.3d 298, 301 (5th Cir. 1994).

B.  Qualified Immunity

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982). Immunity in this sense means immunity from suit, not merely from liability. Jackson v. City of Beaumont, 958 F.2d 616 (5th Cir. 1992). "Qualified immunity is designed to shield from civil liability all but the plainly incompetent or those who violate the law." Brady v. Fort Bend County, 58 F.3d 173, 174 (5th Cir. 1995).

To rebut the qualified immunity defense, the plaintiff must show: (1) a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident. Waltman v. Payne, 535 F.3d 342, 346 (5th Cir. 2008). To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present "absolute proof," but must offer more than "mere allegations." Reese v. Anderson, 926 F.2d 494, 499 (5th Cir. 1991). The Supreme Court used to require that the first of

7

these criteria—whether plaintiff has alleged a constitutional violation—be decided at the outset. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). In 2009 the Court reversed course, holding that lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, -- U.S. --, 129 S. Ct. 808 (2009).

    1.    Medical Care[3]

To succeed in this § 1983 action, Plaintiff must establish the Defendants were deliberately indifferent to his serious medical condition, "an extremely high standard to meet." Domino v. Tex. Dept of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001); see also Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970 (1994) ("[A] prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety...."). An incorrect medical diagnosis is not sufficient to establish a claim. Domino, 239 F.3d at 756. Also, disagreement with a course of medical treatment will not suffice. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991). Plaintiff has failed to provide the Court with summary judgment evidence showing officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985).

---

[3] Plaintiff purports to base his claim to adequate medical care on the Eighth Amendment. Because Plaintiff was a pretrial detainee at the time in question, his rights derive from the Fourteenth Amendment, not the Eighth Amendment. See Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (stating that pretrial detainee's rights "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment"). Having said this, because the standard is essentially the same for both pretrial detainees and post-conviction prisoners, cases applying the Eighth Amendment are still relevant to the Court's analysis.

The summary judgment evidence shows medical staff regularly monitored Plaintiff's vital signs, prescribed medication to maintain a healthy blood pressure, and took him to the hospital when he complained of chest pains. See Defendants' MSJ at Ex. A-4, B, and C. Plaintiff was prescribed multiple medications to treat his blood pressure, and had blood pressure medication given to him to keep on his person at the time that his blood pressure began to escalate. Id. at Ex. B and A-4. When Plaintiff complained of chest pains, they arranged to take Plaintiff to the hospital to be treated. Id. at Ex. B, A-4 at 2450452-2450460. Plaintiff was returned to the TCCC the very same day. Id. The doctor's report indicated Plaintiff's chest x-ray showed "no recent or active disease" of the heart or lungs. Id. Ex. A-4 at 2450456. Contrary to Plaintiff's assertion, his EKG and records from Brackenridge Hospital do not indicate he was diagnosed with LVH. The records also do not suggest Plaintiff was harmed by a brief delay in treatment at the TCCC.

The summary judgment evidence shows Travis County staff were attentive to Plaintiff's medical health needs. Plaintiff's disagreement with the treatment that he received does not establish a claim under § 1983 upon which relief may be granted. See Estelle v. Gamble, 429 U.S. 97, 99-101, 97 S. Ct. 285 (1976) (prisoner's § 1983 suit for alleged denial of medical treatment dismissed for failure to state a claim, despite evidence of minor medical response in the face of repeated prisoner complaints); Domino, 239 F.3d at 753-54 (prison psychiatrist not deliberately indifferent for failing to predict prisoner's suicide after a five minute interview with prisoner); Johnson, 759 F.2d at 1237 (prisoner's suit dismissed upon state's showing of continuing medical treatment); see also Carrothers v. Kelly, 312 Fed. Appx. 600, 602-3 (5th Cir. 2009) (unpublished) ( "The evidence supports the conclusion that Dr. Bearry did not follow through with his plan to refer Carrothers to either an orthopedist or a neurosurgeon. . . . At best, the evidence indicates that Dr. Bearry's failure was the

9

result of negligence, and acts of negligence are not cognizable under § 1983."). At most, Plaintiff's allegations against Travis County staff amount to negligence. However, claimed negligence is not cognizable under § 1983, Daniels v. Williams, 474 U.S. 327, 329-30 (1986). Accordingly, summary judgment should be granted with respect to Plaintiff's claims brought against the defendants in their individual capacities as they are protected by qualified immunity.

C.      County Liability

Plaintiff's claims against the defendants in their official capacities are the same as if the claims were brought against Travis County. A political subdivision, such as Travis County, cannot be held responsible for a deprivation of a constitutional right merely because it employs a tortfeasor; in other words a local government unit cannot be held responsible for civil rights violations under the theory of respondeat superior. Johnson v. Moore, 958 F.2d 92, 94 (5th Cir. 1992). The standard for holding a local government unit responsible under § 1983 requires that there be a custom or policy that caused the plaintiff to be subjected to the deprivation of a constitutional right. Id.; Collins v. City of Harker Heights, Tex., 916 F.2d 284, 286 (5th Cir. 1990), aff'd, 503 U.S. 115, 112 S. Ct. 1061 (1992). Thus, Travis County would violate an individual's rights only through implementation of a formally declared policy, such as direct orders or promulgations or through informal acceptance of a course of action by its employees based upon custom or usage. Bennett v. City of Slidell, 728 F.2d 762, 768 (5th Cir. 1984), cert. denied, 472 U.S. 1016, 105 S. Ct. 3476 (1985). A single decision made by an authorized governmental decisionmaker to implement a particular course of action represents an act of official government "policy." Pembaur v. Cincinnati, 475 U.S. 469, 481, 106 S. Ct. 1292, 1299 (1986).

As mentioned above, Plaintiff failed to demonstrate a constitutional violation for inadequate medical care. However, even assuming that Plaintiff had established a constitutional violation, he has failed to show that a policy was the moving force behind the violation. Plaintiff failed to identify a policy, practice or custom of Travis County that caused a deprivation of his constitutional rights. Moreover, the Travis County Defendants submitted the Jail's policies on the Inmate Health Care Program, Emergency Health Care, the Initial Health Screening of Inmates, Routine Medical Care for Inmates, Transportation of Inmates for Health Care, and Pharmaceuticals. See Def. MSJ at Ex. A-2. There is no evidence that the jail's policies caused the alleged delay in medical treatment.

      D.      Supplemental Jurisdiction

Plaintiff also appears to be asserting state-law claims. Pursuant to 28 U.S.C. § 1367, a district court generally has supplemental jurisdiction over claims that are so related to claims in the action which it has original jurisdiction that they form part of the same case or controversy. However, a district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction. Because summary judgment with regard to Plaintiff's federal-law claims is recommended, the District Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims.

### III. RECOMMENDATION

The undersigned recommends that the District Court **GRANT** Defendants' Motion for Summary Judgment with respect to Plaintiff's federal-law claims [#30] and decline to exercise supplemental jurisdiction over Plaintiff's state-law claims.

## IV. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within 14 days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415, 1428-29 (5th Cir. en banc, 1996).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 14th day of June, 2011.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE